**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | |
|---|---|
| WILLIAM COMBS, JR.,               ) | |
| ) | |
| Plaintiff,               ) | |
| v.                                        ) | Civil Action |
| ) | No. 10-0825-CV-W-JCE-SSA |
| MICHAEL J. ASTRUE,             ) | |
| COMMISSIONER OF             ) | |
| SOCIAL SECURITY,                ) | |
| Defendant.          ) | |

## **ORDER**

This case involves the appeal of a final decision of the Secretary denying plaintiff's application for supplemental security income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 1381 et seq., and his application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401 et seq. Pursuant to 42 U.S.C. §§ 1383(c)(3) and 405(g), this Court may review the final decisions of the Secretary. Pending before the Court at this time are plaintiff's brief, and defendant's reply brief in support of the administrative decision. For the reasons stated herein, it will be ordered that the decision of the Administrative Law Judge ["ALJ"] be affirmed.

<u>Standard of Review</u>

Judicial review of disability determination is limited to whether there is substantial evidence in the record as a whole to support the Secretary's decision. 42 U.S.C. § 405(g); e.g., Rappoport v. Sullivan, 942 F.2d 1320, 1322 (8th Cir. 1991). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. V. NLRB, 305 U.S. 197, 229 (1938)). Thus, if it is possible to draw two inconsistent positions from the evidence and one

position represents the Agency's findings, the Court must affirm the decision.  Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992).

In hearings arising out of an application for benefits, the claimant has the initial burden of establishing the existence of a disability as defined by 42 U.S.C. §§ 423(d)(1).  Wiseman v. Sullivan, 905 F.2d 1153, 1156 (8th Cir. 1990).  In order to meet this burden, the claimant must show a medically determinable physical or mental impairment that will last for at least twelve months, an inability to engage in substantial gainful activity, and that this inability results from the impairment.  Id.  A disabling impairment is one which precludes engaging "in any substantial gainful activity [for at least twelve months] by reason of any medically determinable physical or mental impairment."  42 U.S.C. § 423(d)(1)(A).  A finding of "not disabled" will be made if a claimant does not "have any impairment or combination of impairments which significantly limit [the claimant's] physical or mental ability to do basic work activities. . . ."  20 C.F.R. § 404.1520.

The standard by which the ALJ must examine the plaintiff's subjective complaints of pain is well-settled.  The ALJ must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as the claimant's daily activities, the duration and frequency of pain, precipitating and aggravating factors, dosage and effects of medication, and functional restrictions.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

## Discussion

Plaintiff was 46 years old at the time of the hearing before the ALJ.   He alleges that he is unable to work because of neck and back pain, pain and numbness in his legs, and lack of manual dexterity. Plaintiff has a General Equivalency Diploma. He has past relevant work as a

truck driver, street sweeper, and pizza place worker.

At the hearing before the ALJ, plaintiff testified that he last worked as an over-the-road truck driver approximately three years previously. He had driven a tow truck driver or been an over-the-road trucker for about 20 years. He can't work now because of his neck, back, and whole body being unable to tolerate the bouncing inside a truck. He also doesn't feel comfortable driving anymore. He testified that he can't handle the physical labor required to drive a truck. It was his testimony that he has more bad days than good, with about eight out of ten being bad. He has severe headaches, cramping in his legs and throughout his body, and he cannot sleep more than an hour a night. He attributed his inability to sleep to severe cramps in his legs, back and throughout his body. Medication does not help. He also has no feeling in his hands. He had surgery on his right arm, and doesn't have feeling in his arm or his elbow, but it's especially bad in his hands. In addition to his hands being numb all the time, his legs are also numb, and they tingle. He described walking as like "walking on a sponge [and he has] no stability or balance." [Tr. 467]. He avoids stairs, but if he has to climb them, he does it very slowly. He uses his hands to get up and down, and sometimes he slides down the stairs. Regarding his daily activities, plaintiff testified that he does not cook because of pain, and because the numbness causes him not to have sensation regarding hot and cold. Plaintiff testified that his right hand is very sensitive to hot and cold. He has marks, cuts, and bruises all over him. It hurts his back or neck to lift anything. It takes two hands to lift a gallon of milk. He has to use two hands to pour anything because he has no stability and will drop everything. He could not sit and lift on a sustained basis, eight hours a day, five days a week, even with normal breaks. He has worked as a mechanic, but would be unable to pick up fine parts because he does not have dexterity in his hands. Plaintiff testified that his legs feel like they've fallen

asleep all the time, and he gets no relief from the tingling sensation. It was his testimony that he has a pinched nerve that goes down his right leg, and he's had a steroid nerve block for this. This has been since the accident in 2003.

Plaintiff's father also testified. His son lives with him, and has done so for about a year. He helps around the house a little, but is not able to do very much. He observes his son every day. Mr. Combs described his son's sleeping problems, including him sleeping on the floor because he said it hurts his back to sleep on a bed. He tries to help around the house, but he has to stop a lot if he is doing something like washing dishes or picking things up. He is unable to actually help clean the house. He drops things a lot also because of numbness in his hands. His father stated that plaintiff likes to live on his own, and does not like living with him. It was his testimony that he has a home, but he can't live in it because he can't take care of himself and he can't pay the bills.

According to the testimony of the vocational expert, plaintiff would not be able to perform any of his past relevant work. She testified that unskilled, sedentary work would be available, such as work as an order clerk, or credit authorizer. The vocational expert, when asked by plaintiff's counsel, testified that both the credit authorizer and document preparer jobs would require manual dexterity. It was her testimony that if a person were incapable of any manual dexterity, bilaterally, there would be no jobs available.

The ALJ found that plaintiff had not engaged in substantial gainful activity since December 1, 2003, the alleged onset date. It was his finding that plaintiff has severe impairments of "degenerative disc disease and degenerative joint disease of the lumbar spine, status post degenerative joint disease of the cervical spine, status post left leg edema and cellulitis, and status post right carpel tunnel syndrome and ulnar nerve surgery. . . ." [Tr. 23]. He

found that plaintiff was not totally credible.  He concluded that plaintiff did not have an impairment or combination of impairments that met or equaled a listed impairment.  It was his finding that plaintiff could not perform his past relevant work, but that he had the Residual Functional Capacity ["RFC"] to perform sedentary work with limitations.   Specifically, he found that plaintiff had the RFC to "perform sedentary work except no vibration particularly in the arms and hands; no climbing of ladders, ropes or scaffolds; and unable to engage in repetitive hand grasping such as [with] hand tools."  [Tr. 24].   Therefore, the ALJ found that plaintiff was not under a disability as defined by the Act.

Plaintiff contends that the ALJ erred in his RFC determination; erred by not fully developing the record; and erred in his credibility analysis.

A review of the medical records in this case indicates that plaintiff has a history of anterior fusion and fixation of the cervical spine; cervical disc disease; and laminectomy of the lumbar spine.  In addition to surgeries, he has had physical therapy for his cervical and lumbar spine surgeries.  Plaintiff was in a car accident in 2003, which caused him to go to the emergency room because of neck pain and headaches.  He sought continuous treatment for neck pain in 2003, and was prescribed a number of pain medications and muscle relaxers.  The doctor noted decreased range of motion and tenderness in his shoulders.  He spent three days in the emergency room in 2003 because of chills, rigors, and left lower extremity pain, which was consistent with acute left lower extremity cellulitis.  Plaintiff sought treatment in 2004 for neck and back pain. When he was evaluated by the Occupational Medicine Division of Employer Health Services in April of 2004, the doctor noted that plaintiff would probably not be able to "handle significant or strenuous material handling activity." [Tr. 244].  He also opined that plaintiff exhibiting self-limiting behavior with "considerable emphasis on suffering. . . ." [Id].

Plaintiff was evaluated in April of that year by Dr. Allen Parmet. At the disability evaluation, he reported that he had had several motor vehicle accidents. One in 1993 resulted in two back surgeries. He had a lumbar laminectomy in 1998 with some complications and a cervical fusion. The doctor noted that plaintiff complained of chronic back pain and neck pain, as well as limitation in motion. He advised the doctor that he had been functional after his back surgeries until he was rear-ended in another motor vehicle accident in 2003. He advised the doctor that he has neck and back pain, which activity makes worse; that he has headaches; that he cannot bend over; that walking up and down stairs causes pain; that he has swelling in his legs when he stands for any length of time; and that he cannot lift over 20 pounds. Upon examination, the doctor found that he had limited range of motion in both shoulders; that he a slight decrease of sensation in the right arm; that he had extremely limited range of motion in his cervical spine with tenderness; and that his lumbar range of motion was extremely limited. The doctor observed a nine-inch long surgical scar in his back, and a right iliac crest scar, both well-healed. He also noted significant edema in plaintiff's lower left leg extended almost to the knee, with pitting edema and chronic statis dermatitis. Plaintiff's ankle circumference was 11 inches on the right leg and 13 on the left. The doctor diagnosed plaintiff with cervical pain status post-cervical fusion, with significantly restricted range of motion in his neck and chronic neck pain; low back pain status post-laminectomy with a significant degree of limitation in his lumbar spine with "surgical evidence of a fairly large procedure that would be considerably more than a simple laminectomy." [Tr. 260]. It was also Dr. Parmet's opinion that the size of the scar might support the complications that plaintiff describes. He found that the chronic lymph edema would prohibit him standing for very prolonged periods. The doctor found that plaintiff would be able to function at the light or possible medium level of work; that he had a 20-pound lifting

restriction; that he could not perform certain activities requiring extensive head motion, such as overhead work or climbing; and that he could stand and walk for a cumulative total of six hours per day. He found no other restrictions.

In April of 2005, plaintiff underwent right carpal tunnel release and right elbow ulnar nerve submuscular transposition at the elbow. Plaintiff experienced more pain and drainage than expected, and ulnar nerve instability, which were noted at his follow-up appointments. On May 11, the doctor noted that his surgery wound was "much improved." [Tr. 293]. He had nerve testing in January of 2007 for both the upper and lower extremities, which were essentially within normal limits. The impression from the testing, among other findings, was that there was no electrodiagnostic evidence of right carpal tunnel syndrome.

Turning first to plaintiff's contention that the ALJ erred in his credibility determination, it is his position that the ALJ failed to consider the overall evidence, and overlooked the consistent objective evidence and physician's opinions that support his functional limitations. He asserts that he has had numerous surgeries throughout the years, and has been through months of physical therapy. It is his position that despite surgery, therapy and medication, his condition has not improved, and that the ALJ erred in discounting his subjective reports. Plaintiff contends that the ALJ failed to cite to any evidence to support his conclusion that he only went to the emergency room to get refills that he could not get from his treating providers.

Defendant maintains that none of the doctors who examined plaintiff suggested he had disabling impairments. It is also suggested that plaintiff's complaints were not fully credible because he appeared to give poor effort at times during testing, and he demonstrated inconsistent behavior, such as being seen limping and then walking with a normal gait on the same day. Regarding the emergency room visits, defendant contends that plaintiff had inconsistent

complaints when he went to the emergency room on one occasion, and that he left the hospital without full treatment because he became angry at an x-ray technician. It was further noted that plaintiff went to another emergency room the same day, claimed a new injury, and was refused pain medication by two different physicians.

A review of the record indicates that the ALJ discredited plaintiff in part because he noted that plaintiff was able to return to substantial gainful employment after having had neck surgeries almost ten years ago. The ALJ also concluded that plaintiff's rendition of severely restricted daily activities was not supported by objective evidence. Additionally, he found that plaintiff often went to the emergency room to get early refills on medication; that he has a history of marijuana and cocaine use, and that "much of his activities at emergency rooms appears to be drug seeking." [Tr. 27]. It was also concluded by the ALJ that plaintiff made inconsistent reports of pain and numbness. Although he testified that he was not comfortable with driving, there was nothing in the record to indicate that he sought employment assistance or other employment consistent with his alleged restrictions. It was also noted that no treating or examining physician has opined that he was disabled from any work.

Having fully reviewed the record, the Court finds that there is substantial evidence in the record to support the ALJ's finding regarding plaintiff being partially credible. In evaluating a claimant's allegations, the ALJ must consider, in addition to the medical evidence, the Polaski factors. These include prior work history, daily activities, duration and intensity of pain, effectiveness and side effects of medication, aggravating factors, and functional restrictions. Bowman v. Barnhart, 310 F.3d 1080, 1083 (8th Cir. 2002). In discrediting subjective claims, the ALJ cannot simply invoke Polaski or discredit the claims because they are not fully supported by medical evidence. Lowe v. Apfel, 226 F.3d 969, 972 (8th Cir. 2000). Instead, the

ALJ must make an express credibility determination that explains, based on the record as a whole, why the claims were found to be not credible. Id. at 971-72. "Where adequately explained and supported, credibility findings are for the ALJ to make." Id. at 972.

Based on a full review of the record, the Court concludes that the ALJ adequately detailed the reasons for discrediting plaintiff's testimony, and adequately discussed the factors set forth in Polaski. There is evidence in the record from several physicians to suggest that plaintiff tended to exaggerate his symptoms. Regarding the two visits to the emergency room in one day and the ALJ's opinion that plaintiff was seeking pain medication, the record reflects that plaintiff advised the emergency room physician at the first visit that his treating physician would not give him more pain medication because of unresolved issues with his elbow. Plaintiff advised that he had been out of pain medication since the previous day. Additionally, the record does indicate that plaintiff's complaints were inconsistent that day, in that he complained about pain and then stated that it was the weakness and not the pain that he was worried about. On that occasion, plaintiff left against medical advice because he was annoyed with an x-ray technician. He did receive pain medication before he left. When he went to another emergency room later that day, complaining again about leg weakness, he did inform that doctor that this was his second trip in one day. That doctor noted that he did not seem to be giving full effort. He concluded that the cause of the leg weakness was unclear, but that he did not believe it was caused by a herniated disc. He advised plaintiff that he would have to get pain medication refills through the Headache and Pain Center. Based on a careful review of the record as a whole, the Court finds that there is substantial evidence to support the ALJ's conclusions regarding plaintiff's credibility. Further, the Court finds that the ALJ made an express credibility determination, adequately explaining why he found plaintiff's claims not to be fully credible.

Lowe, 226 F.3d at 972.

Regarding the RFC finding, having fully reviewed the record, the Court finds that the ALJ's decision reflects that he carefully considered plaintiff's course of treatment, reviewed all the relevant diagnostic tests and medical records, as well as plaintiff's credibility, and relied on the opinion of the vocational expert. Plaintiff had the burden to come forward with relevant evidence of his restrictions. The Commissioner's regulations state that it is the claimant's responsibility to provide medical evidence to show that he or she is disabled. See 20 C.F.R. §§ 404.1512, 416.912 (2008); Roth v. Shalala, 45 F.3d 279, 282 (8th Cir.1995).

The Eighth Circuit has recognized that the RFC finding is a determination based upon all the record evidence, not just "medical" evidence. See Pearsall v. Massanari, 274 F.3d 1211, 1217-18 (8th Cir. 2001); Dykes v. Apfel, 223 F.3d 865, 866-67 (8th Cir.2000) (citing 20 C.F.R. § 404.1545; SSR 96-8p at pp. 8-9). The RFC formulation is a part of the medical portion of a disability adjudication. Although it is a medical question, the RFC findings are not based only on "medical" evidence, i.e., evidence from medical reports or sources. Rather, an ALJ has the duty, at step four, to formulate the RFC based on all the relevant, credible evidence of record. See McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations).

In this case, the Court finds that there is substantial evidence to support the ALJ's decision regarding plaintiff's RFC. The ALJ properly considered all the evidence of record in analyzing plaintiff's credibility, and then properly considered all of the evidence of plaintiff's restrictions found to be credible in determining his RFC. He limited him to sedentary work, with no vibration, particularly in the arms and hands; no climbing of ladders, ropes or scaffolds;

and no repetitive hand grasping, such as with hand tools.  Despite the severe impairments recognized by the ALJ and incorporated into the RFC, there is nothing in the record to suggest that plaintiff cannot perform sedentary work within the range recommended by the vocational expert. Additionally, it should be noted that the ALJ adopted an RFC that was more restrictive than that provided by Dr. Parmet, who conducted the disability evaluation, and who found that plaintiff would be able to function at the light or possible medium level of work. The record as a whole does not establish that he has a disabling impairment that would totally preclude him from working.  The ALJ was under no obligation to further develop the record, particularly regarding any problems with carpal tunnel syndrome in the left arm or hand.  It should be noted that the nerve conduction studies performed in 2007 indicated that his extremities were mainly within normal limits.  Accordingly, there is nothing in the record to suggest that plaintiff might not have bilateral manual dexterity to the extent that he could not perform the types of work identified by the vocational expert. Adequately presenting his alleged disabilities is the responsibility of plaintiff.

Having fully reviewed the record, the Court finds that there is substantial evidence to support the ALJ's determination plaintiff that  had the RFC to perform a limited range of sedentary work.  Based on the record as a whole, it cannot be said that the ALJ erred in his RFC assessment.

Based on the foregoing, the Court finds that there is substantial evidence in the record to support the ALJ's decision that plaintiff does not suffer from a disabling impairment, and that he was not disabled under the Act during the time period in question. Dukes v. Barnhart, 436 F.3d 923, 928 (8th Cir.  2006).   The ALJ's finding that plaintiff was not disabled is supported in the record as a whole.

Accordingly, the decision of the Secretary should be affirmed.

It is hereby

ORDERED that the decision of the Secretary should be, and it is hereby, affirmed.

/s/ James C. England<br>
JAMES C. ENGLAND<br>
United States Magistrate Judge

Date: 12/19/11